OPINION
{¶ 1} Defendant Indiana Insurance Company appeals a judgment of the Court of Common Pleas of Stark County, Ohio, which found plaintiff Terry Poulton is an insured under the commercial automobile liability policy and excess/umbrella policy issued by Indiana to Sun State Plastics, Inc., the employer of Terry Poulton's wife, Nancy E. Poulton. Indiana Insurance assigns seven errors to the trial court:
 {¶ 2} "I. The trial court erred in refusing to enforce a valid, knowing, and effective rejection of Uninsured/Underinsured Motorist Coverage with Respect to the Indiana Umbrella Policy and further Erred in imposing Uninsured/Underinsured Motorist Coverage under the Umbrella Policy by Operation of Law.
 {¶ 3} "II. The trial court erred in finding Appellee Terry Poulton an insured for purposes of Uninsured/Underinsured Motorist Coverage under the Umbrella policy.
 {¶ 4} "III. The trial court erred in refusing to enforce valid and enforceable anti-stacking language in the various Policies.
 {¶ 5} "IV. The trial court erred in determining that Coverage owed by Indiana is primary and should share pro Rata with American States.
 {¶ 6} "V. The trial court erred in entering judgment against Indiana based upon an Arbitration Award in excess of Indiana's Contractual Obligations.
"VI. The trial court erred in enforcing an arbitration award against Indiana with respect to a commercial Umbrella Policy that contained no Arbitration Provision.
 {¶ 7} "VII. The trial court abused its discretion in awarding prejudgment interest from the date of the accident."
 {¶ 8} In its judgment entry of January 9, 2002, the trial court found the facts which gave rise to the action are undisputed. Plaintiff Terry L. Poulton was injured in a motorcycle/automobile accident on August 3, 1998. The crash occurred when defendant Kelly Burroway, who is not a party to this appeal, failed to yield the right of way and struck Poulton as he was operating his motorcycle. Poulton suffered severe injuries, requiring the amputation of his leg above the knee.
 {¶ 9} Burroway was uninsured at the time of the accident and has since filed bankruptcy. Poulton's motorcycle was insured by Dairyland Insurance Company with a UM/UIM coverage limit of $100,000, which Dairyland paid. On the date of the accident, Poulton was also insured under a personal automobile policy issued by American States Preferred Insurance Company. The policy provided UM/UIM coverage, although the parties disputed the limit of the coverage.
On the date of the accident, Terry Poulton was unemployed. His wife, Nancy Poulton, was employed by Sun State Plastics, Inc. Indiana Insurance Company insured Sun State Plastics, Inc. under two policies. The first is a commercial automobile policy which provides UM/UIM coverage in the amount of $1,000,000. The trial court found Indiana Insurance had reluctantly conceded Poulton would qualify as a named insured under the commercial automobile liability policy pursuant to the authority of Scott-Pontzer v. Liberty Mutual Fire Insurance Company(1999),85 Ohio St.3d 660 and Ezawa v. Yasuda Fire Marine Insurance Company of America (1999), 86 Ohio St.3d 557.
 {¶ 10} The second policy Indiana issued to Sun State Plastics, Inc. was a commercial excess/umbrella policy, which provided liability coverage in the amount of $2,000,000.
 {¶ 11} The trial court noted that on July 9, 1998, a corporate representative signed an express rejection of UM/UIM coverage for the commercial excess/umbrella policy.
 {¶ 12} The trial court ruled Poulton was an insured under the commercial automobile liability policy pursuant to Scott-Pontzer, supra, and Ezawa, supra, as Indiana had conceded. The court found Terry Poulton was entitled to $1,000,000 in UM/UIM coverage on the Indiana Insurance Company commercial automobile policy.
 {¶ 13} The trial court further found the Indiana rejection form which was signed by the Sun State Plastics representative did not meet the requirements of R.C. 3937.18(C) and Linko v. Indemnity Insurance Company of North America(2000), 90 Ohio St.3d 445. The trial court found the rejection form was invalid and unenforceable, and hence Poulton was entitled to UM/UIM coverage under the Indiana umbrella policy by operation of law, in the amount of $2,000,000.
 {¶ 14} The trial court found that Dairyland Insurance Company, which insured the motorcycle Poulton was driving, was the primary insurance carrier. The court found Dairyland had paid its limits of $100,000 of UM coverage to Poulton. The court found both American States and Indiana Insurance are excess carriers based upon the language in the policies. The court found as excess carriers, both American States and Indiana must provide UM/UIM coverage over and above the limits of the primary carrier, Dairyland.
The trial court found Terry Poulton was entitled to a maximum limit of UM/UIM coverage from Indiana of $3,000,000, that is, $2,000,000 from the umbrella policy and $1,000,000 from the commercial automobile liability policy. The trial court therefore reduced the arbitration award of $2,500,000 to judgment, and awarded Indiana Insurance Company a set-off of $100,000, the amount paid out by Dairyland, against the judgment. The trial court further ordered pre-judgment interest be calculated from August 3, 1998, the date of the accident.
 {¶ 15} The matter came before the trial court upon cross motions for summary judgment filed by Poulton, American Economy Insurance Company, and Indiana Insurance.
 {¶ 16} Civ.R. 56(C) states in pertinent part:
 {¶ 17} (C) Motion and proceedings
 {¶ 18} "The motion shall be served at least fourteen days before the time fixed for hearing. The adverse party, prior to the day of hearing, may serve and file opposing affidavits. Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages."
The parties concede there is no genuine dispute of any material facts, and the issues presented are issues of law.
 I {¶ 19} In its first assignment of error, Indiana argues the trial court should have enforced the rejection of UM/UIM coverage under the Indiana umbrella policy. Indiana cites us to Hindall v. Winterthur International(March 29, 2001), U.S. District Court, Northern District of Ohio, unreported. In Hindall, the federal district court held H.B. 261 supercedes the requirement set forth in the prior cases of Linko, supra, and Gyori v. Johnston Coca-Cola Bottling Group, Inc. (1996),76 Ohio St.3d 565.
 {¶ 20} Indiana points out the policy was issued on April 1, 1998, and the rejection form was signed on July 9, 1998. H.B. 261 was effective September 7, 1997. Pursuant to H.B. 261, a named insured may reject UM coverage if it is in writing and signed by the named insured. The Supreme Court in Linkorequired four elements be met in order to satisfy the statutory requirement of a written offer of UM coverage. Linkoheld the insurer must first inform the insured of the availability of UM/UIM coverage; secondly, set forth the premium for the coverage; thirdly, include a brief description of the coverage, and fourthly, expressly state the UM/UIM coverage limits in its offer, Linkoat 447-449. If any of the elements are absent, there is no express offer and no rejection can be made as a matter of law.
 {¶ 21} In Gyori, the Supreme Court found the rejection form cannot be signed after the inception date of the policy. Here, the rejection form was signed several months after the policy took effect. Thus, if Linko and Gyori apply, then the rejection of UM/UIM coverage is invalid as a matter of law.
Indiana urges us to find Linko and Gyori do not apply to cases involving post H.B. 261 analysis, because they interpreted previous versions of the statute.
 {¶ 22} In Pillo v. Stricklin(January 28, 2002), Stark Appellate No. 2001CA203, this court found the elements required by the Linkocourt must be met. We likewise find the Gyoricase has not been superceded by H.B. 261, and that the signed rejection must be received prior to the commencement date of the policy.
 {¶ 23} We find the trial court correctly determined there was no valid, knowing, and timely rejection of the UM/IUM motorist coverage. Accordingly, the first assignment of error is overruled.
 II {¶ 24} In its second assignment of error, Indiana argues Terry Poulton was not insured for purposes of uninsured/underinsured motorist coverage under the umbrella policy. Indiana urges even if Nancy Poulton, Terry Poulton's wife, falls within the definition of insured pursuant to the Supreme Court's decision in Scott Pontzer, Terry Poulton is not included in the definition of insured contained in the umbrella policy.
 {¶ 25} The definition of "who is an insured" in the umbrella policy is: if the named insured is an organization other than a partnership or joint venture, the organization is an insured. The executive officers and directors are insureds with respect to their duties as officers or directors only. The stockholders are also insureds, but only with respect to their liability as stockholders. Any other person or organization qualifying as an insured in any underlying insurance, but not for broader coverage than that afforded by the underlying insurance.
Simply stated, Indiana argues because Terry Poulton is not an insured for liability purposes under the umbrella coverage portion of the umbrella policy, he is likewise not covered by any UM/UIM coverage. Indiana points out Scott Pontzeris dispositive of the issue because in Scott Pontzer, the Supreme Court stated the coverage imposed by operation of law extends to the employee.
 {¶ 26} Umbrella policies are different from standard excess insurance policies in that they are intended to fill gaps in coverage both vertically, that is, by providing excess coverage, see Pillo v. Stricklin(February 5, 2001), Stark App. No. 2000CA00201 and horizontally, by providing primary coverage.
 {¶ 27} Here, Indiana argues the definition of an insured in the umbrella policy does not include a person of Terry Poulton's status. However, we find because Terry Poulton is an insured under the commercial liability policy, the umbrella policy must provide excess coverage for him as well.
 {¶ 28} The second assignment of error is overruled.
 III {¶ 29} In its third assignment of error, Indiana argues there is a valid and enforceable anti-stacking clause in the business auto policy which limits Poulton's recovery to the highest applicable limits under any policy. Indiana advances the argument the highest applicable limit is $1,000,000 under the business auto policy.
 {¶ 30} Poultons respond the anti-stacking language is only found in the auto business policy, and should not be implied in the umbrella policy. The umbrella policy does not have anti-stacking language.
In Rohr v. The Cincinnati Ins. Co.(Mar. 28, 2002), Stark Appellate No. 2001CA00237, this court found conditions imposed under a homeowner's policy could not bar the insureds from collecting under UM/UIM coverage implied by law. If the umbrella policy does not contain language demonstrating the parties intended to have the exclusionary provisions of the commercial automobile policy apply to the UM/UIM motorist coverage, then the court may not extend the exclusions to the underinsured motorist coverage.
 {¶ 31} We find the anti-stacking language contained in the auto policy does not apply and cannot limit coverage under the umbrella policy, which arises by operation of law. Accordingly, the third assignment of error is overruled.
 IV {¶ 32} The fourth assignment of error addresses an issue raised by the trial court's judgment on reconsideration.
 {¶ 33} In its fourth assignment of error, Indiana argues American States coverage is primary and the Indiana coverage is excess. Both policies contain similar "other insurance" clauses. The Indiana policy provides if there is other applicable insurance available under one or more policies or provisions of coverage, then any insurance Indiana provides with respect to a vehicle "you do not own" shall be considered excess over any other collectable uninsured motorist insurance providing coverage on a primary basis. In the policy, "You" is Sun State Plastics, Inc., the employer corporation.
 {¶ 34} In its judgment entry of January 9, 2002, the trial court found the parties had agreed that Dairyland Insurance Company is the primary insurance carrier because it insured the motorcycle Poulton was driving when he was injured. The court found, based upon the language in the policy, that Indiana is an excess carrier and must provide UM/UIM coverage over and above the limits of the primary carrier. Dairyland, the primary carrier, paid $100,000 to Poulton.
Indiana filed a motion for reconsideration on January 22, 2002. Upon reconsidering its decision, the trial court found American States and Indiana are both primary insurers and should pay on a pro-rata basis. The court found the "other insurance" clause found in the American States policy should have been interpreted to mean that the coverage for Poultons would be primary. The court also found the other insurance clause found in the Indiana policy should be interpreted as providing primary coverage to the Poultons under the holding in our case of United Ohio Company v. Bird(May 18, 2001), Delaware Appellate No. 00CA31.
 {¶ 35} Poultons argue the trial court's original conclusion was correct, and that Indiana's auto policy and American States auto policy were both excess to the primary policy issued by Dairyland.
 {¶ 36} On February 7, 2002, Indiana filed its notice of appeal from the trial court's original judgment of January 9, 2000. This timely appeal is designated 2002-CA-00038.
 {¶ 37} On January 22, 2002, Indiana filed a motion for reconsideration. After the trial court sustained the motion on February 13, 2002, Indiana filed a notice of appeal from that judgment. The appeal, filed February 27, 2002, was numbered 2002-CA-00061.
 {¶ 38} This court consolidated the appeals on March 13, 2002.
 {¶ 39} The Civil Rules do not permit a motion to reconsider a final judgment from a court of original jurisdiction, see, e.g., Stein v. Wyandotte Cellars, Inc.(1993), 88 Ohio App.3d 477, 624 N.E.2d 308.
 {¶ 40} We find the trial court lacked jurisdiction to enter the judgment of February 13, 2002. The January 9, 2002 judgment was not only final, but the notice of appeal of February 7 invoked this court's jurisdiction. Each of these facts deprive the trial court of jurisdiction to reconsider.
The Indiana policy provides the following language in the "Other Insurance" clause:
 {¶ 41} "If there is other applicable insurance available under one or more policies or provisions of coverage:
 {¶ 42} "* * *
 {¶ 43} "c. Any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible uninsured motorists insurance providing coverage on a primary basis."
 {¶ 44} Indiana argues the "you" referred to in the above language is Sun State Plastics, Inc. Further, since Sun States Plastics, Inc. can own a vehicle as a corporation, the use of the word "you" is not ambiguous as it pertains to the "Other Insurance" clause and therefore, the Scott-Pontzeranalysis does not apply. Thus, Indiana concludes that because Sun States Plastics, Inc. did not own the vehicle operated by Terry Poulton at the time of the accident, the "Other Insurance" clause applies and their coverage is excess rather than primary.
 {¶ 45} We find, pursuant to this court's decision in United Ohio Company v. Bird, supra, that Terry Poulton is entitled to primary coverage under Indiana's "Other Insurance" clause. In the United Ohiocase, which interpreted an "Other Insurance" clause, we held the interpretation of the word "you" must be applied consistently to all provisions of the contract. In reaching this conclusion, we cited the case of Lyttle v. Progressive Cas. Ins. Co.(Feb. 4, 1999), Cuyahoga App. No. 73620. The court explained in Lyttle:
"We agree with Progressive that if the court finds the definitions of `you' and `insured' to be ambiguous and if the court then revises those definitions to favor the insured, it is those revised, nonambiguous definitions which must be applied throughout the policy, absent another ambiguity or absurdity of language. Thus, having included Lyttle within the definitions of `you' and `insured,' we will consistently apply these definitions to the term `you' in the `temporary substitute auto' provision. United Ohioat 3, citing Lyttleat 6.
 {¶ 46} Accordingly, Terry Poulton is included within the definition of "you" and the "Other Insurance" clause must be read as follows:
 {¶ 47} Any insurance we [Indiana] provide with respect to a vehicle you [Terry Poulton] do not own shall be excess over any other collectible uninsured motorists insurance providing coverage on a primary basis."
 {¶ 48} Therefore, since the term "you" includes Terry Poulton and Terry Poulton owned the motorcycle involved in the accident, the coverage provided by Indiana is not excess coverage, but rather primary coverage.
 {¶ 49} We also find American States is a primary insurer. American States' "Other Insurance" clause provides as follows:
 {¶ 50} "If there is other applicable insurance available under one or more policies or provisions of coverage:
 {¶ 51} "* * *
 {¶ 52} "B. Any insurance we provide with respect to a vehicle you do not own shall be excess over any collectible insurance providing coverage on a primary basis."
The American States policy lists Terry Poulton and Nancy Poulton as the named insureds. Clearly, the "you" referred to in American States' "Other Insurance" clause includes both Terry and Nancy Poulton. Since Terry Poulton owned the motorcycle involved in the accident and the term "you" includes Terry Poulton, the coverage provided by American States is primary.
 {¶ 53} Accordingly, we find the trial court's January 9, 2002 judgment entry is incorrect.
 {¶ 54} The fourth assignment of error is overruled.
 V {¶ 55} In its fifth assignment of error, Indiana argues the trial court erred in entering judgment against it on an arbitration award which was in excess of Indiana's contractual obligations. This argument is based on the contention that the maximum contractual obligation Indiana has incurred is $600,000. Indiana arrives at this number by beginning with the $1,000,000 limit of the commercial auto policy, and applying the anti-stacking and excess provisions. Dairyland would contribute $100,000, and American States $300,000, each of which Indiana would set off from the $1,000,000.
 {¶ 56} Because we have found supra, that the anti-stacking language does not apply, we find Poulton's recovery is not limited to $1,000,000 under Indiana's commercial auto policy, or $600,000 after set offs. We find instead the trial court correctly found $3,000,000 is available, and because the judgment against Indiana is less than $3,000,000, the trial court was correct in entering judgment in that amount against it.
 {¶ 57} The fifth assignment of error is overruled.
 VI
In its sixth assignment of error, Indiana argues its commercial umbrella policy contained no arbitration provision, although the business auto policy did. Indiana argues it was entitled to a jury trial regarding the umbrella policy, and because of the lack of an arbitration clause in the umbrella policy, the trial court could not enter a judgment based on the arbitration award.
 {¶ 58} The Poultons point out Indiana has waived this argument, which was not made at the trial court level. In addition, the Poultons argue because the umbrella policy provides excess coverage over and above the insured's primary policies, the binding arbitration provision in Indiana's business auto policy binds the umbrella policy to the arbitration results.
 {¶ 59} Appellee American States argues it did not participate in the arbitration, and for this reason, judgment should not have been entered against them. The record indicates American States attended the arbitration proceedings but did not participate.
 {¶ 60} We find when Indiana did not object to the arbitration at the trial court level, it waived its objections to the arbitration, and cannot raise this issue on appeal. Further, we find American States' argument is raised in its appellee's brief, and American States did not file a separate cross-appeal on this issue. Accordingly, we find American States has likewise waived this argument.
 {¶ 61} The sixth assignment is overruled.
 VII {¶ 62} In its final assignment of error, Indiana argues the trial court erred in awarding pre-judgment interest from the date of the accident.
The trial court cited two reasons in support of its selection of the date of the accident as the date from which pre-judgment interest should be awarded. First, the court found the underlying purpose of contractual pre-judgment interest is to make the party whole, or to insure that the aggrieved party has been fully compensated. The award of pre-judgment interest will compensate an aggrieved party for a loss of the benefit of money the party was otherwise entitled to under the contractual rights. Secondly, the court stated it was of the opinion that this was a contract wherein an individual is provided additional coverage against irresponsible drivers. The court found it is a specific coverage to insure full compensation from the date the injuries occur.
 {¶ 63} Indiana submits it is absurd to award pre-judgment interest under a contract theory, when the contract of insurance Indiana issued did not contemplate UM coverage, particularly for the spouse of an employee injured outside the scope of employment. Additionally, Indiana again advances its argument that its obligation is limited by the anti-stacking and excess provisions of the policy.
 {¶ 64} Probably the best argument Indiana makes is that it did not receive notice of the claim until August 9, 2000, more than two years after the accident occurred. Indiana cites our case of Nichols v. Milwaukee (Aug. 21, 2000), Stark Appellate No. 2000CA00066 in support of its argument prejudgment interest should be awarded from the date of notice.
 {¶ 65} The Poultons cite us toLandis v. Grange Mut. Ins. Co.(1998), 82 Ohio St.3d 339, wherein the Supreme Court of Ohio directed us to review a trial court's calculation of pre-judgment interest using the abuse of discretion standard. The Supreme court has frequently defined the term abuse of discretion as indicating the court's decision is unreasonable, arbitrary, or unconscionable, see Blakemore v. Blakemore(1983), 5 Ohio St.3d 217. Landisheld it is for the trial court to determine when the pre-judgment interest should be calculated from, and Landislisted the date coverage was demanded or denied, the date of the accident, the date which arbitration damages would have ended, or some other time might all be appropriate dates for the trial court to select.
We have reviewed the reasons stated by the trial court for setting the date from which pre-judgment shall run, and we find no indication the decision was unreasonable, arbitrary or unconscionable. Accordingly, we find the court did not abuse its discretion in awarding pre-judgment interest from the date of the accident.
 {¶ 66} The seventh assignment of error is overruled.
 {¶ 67} For the foregoing reasons, the January 9, 2002, judgment of the Court of Common Pleas of Stark County, Ohio, is affirmed in part and reversed in part.
 {¶ 68} The February 13, 2002 judgment is vacated.
Hoffman, P.J., concurs.
Wise, J., dissents in part.